

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

JAM:ADR
F. #2022R00912

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

November 22, 2023

<u>By Email</u>

The Honorable Robert M. Levy
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    <u>United States v. Fathy Hussein</u>
               <u>Magistrate Docket No. 23-1029</u>

Dear Judge Levy:

      The government respectfully submits this letter in support of its application for a permanent order of detention with respect to the defendant Fathy Hussein. As described below and in the above-captioned criminal complaint (the "Complaint"), the defendant, while still on probation for a weapons offense, participated in a violent gunpoint robbery of a tobacco and smoke shop in Queens, New York. The defendant is charged with Hobbs Act robbery in violation of Title 18, United States Code, Section 1951(a).

      For the reasons set forth below, the government submits that the defendant is both a danger and a flight risk and that no combination of conditions can reasonably secure his appearance at trial or the safety of the community. Accordingly, he should be detained.

I.     <u>Background</u>

      On or about September 14, 2022, at approximately 5:55 p.m., three men wearing masks (the "Robbers") exited a black Mazda 3 sedan with right front-end damage and missing hubcaps (the "Subject Vehicle") and entered a shop at 135-20 109th Avenue in Queens, New York (the "Tobacco Shop"). Two of the Robbers immediately pointed firearms at store employees and customers (including what appears to be an assault-style rifle), forcing several of them to the ground.

      Meanwhile, the third Robber, later identified as the defendant, ran behind the checkout counter and emptied money from the cash register. The defendant also found and took a bag filled with additional cash that was not stored inside the register. The defendant then grabbed several cannabidiol ("CBD") and marijuana products from a glass display case at the counter and deposited them into black plastic trash bags. Finally, the defendant grabbed several

store employees' cell phones that had been left out in the store atop the checkout counter and elsewhere.

Thereafter, the Robbers fled the Tobacco Shop and entered the Subject Vehicle, which was waiting at the end of the block at the corner of 109th Avenue and Van Wyck Expressway, and drove off.  In total, they stole approximately $3,000 in cash, approximately $1,000 of CBD and marijuana products, and four cell phones.

The entire robbery was captured on video cameras inside and outside the Tobacco Shop, as depicted below.  At approximately 5:55 p.m., the Robbers can be seen exiting the Subject Vehicle and entering the Tobacco Shop.  Between approximately 5:55 p.m. and 5:57 p.m., the Robbers can be seen robbing the Tobacco Shop at gunpoint as described above.  At approximately 5:57 p.m., the Robbers can be seen fleeing the Tobacco Shop, running down the block, entering the Subject Vehicle and driving off.

All three men can be seen clearly in the video footage wearing distinctive clothes.  The defendant can be seen wearing dark green pants with distinctive multicolored underwear showing above the waistband.  The pattern visible on the underwear includes a large white letter "R" and text resembling the year "1990" in yellow.  The defendant can also be seen wearing light brown boots, a dark hooded sweatshirt, white latex gloves, a black facemask and dark sunglasses.

Exiting Subject Vehicle / Entering Tobacco Shop:




Gunpoint Robbery of Tobacco Shop:





Fleeing Tobacco Shop:





The video footage of the robbery was made public and appeared on the local news and the internet. On September 20, 2022, an anonymous call was received on the New York City Police Department ("NYPD") Crime Stoppers hotline with information about the robbery. Among other things, the caller indicated that, on the day of the robbery, the Robbers attempted to sell the stolen items in the vicinity of 129th Street and Liberty Avenue in Queens, New York. The caller also indicated that one of the Robbers was an individual with the Instagram handle "litty_loccain." NYPD detectives reviewed the Instagram account for "litty_loccain" and observed that the profile picture appeared to be a picture of the defendant, who had prior arrests and whose photograph was available in law enforcement databases. Both are depicted below.




Based on the Crime Stoppers tip, NYPD detectives reviewed video surveillance footage from the vicinity of 129th Street and Liberty Avenue from the day of the robbery. The footage revealed that, at approximately 6:50 p.m. that day, a black Mazda 3 sedan with right front-end damage and missing hubcaps, resembling the Subject Vehicle, appeared in that area and several individuals exited.

Minutes later, between approximately 6:57 and 7:00 p.m., footage from a storefront camera in that same vicinity shows the defendant walking on Liberty Avenue between 127th Street and 128th Street. In the footage, as depicted below, the defendant can be seen with no mask and his face clearly visible, wearing the same light brown boots, dark green pants, and distinctive multicolored underwear with a white "R" and yellow text resembling the year "1990" that he can be seen wearing during the robbery. NYPD detectives who had previously interacted with the defendant, including during his prior arrests, viewed the Liberty Avenue footage and confirmed that the individual who could be seen in it appeared to be the defendant.

  

Location data associated with a phone used by the defendant, obtained pursuant to a judicially authorized search warrant, places the defendant blocks away from the Tobacco Shop at approximately 5:23 p.m., approximately one half-hour before the robbery, and blocks away from the above-described Liberty Avenue location at approximately 7:34 p.m., approximately one half-hour after he can be seen on video footage walking there.

II.     Legal Standard

Under the Bail Reform Act, Title 18, United States Code, Section 3141 et seq., federal courts are empowered to order a defendant's detention pending trial upon a determination that "no condition or combination of conditions would reasonably assure the appearance of the person as required and the safety of any other person and the community[.]" 18 U.S.C. § 3142(e). A finding of dangerousness must be supported by clear and convincing evidence. See United States v. Ferranti, 66 F.3d 540, 542 (2d Cir. 1995). A finding of risk of flight must be supported by a preponderance of the evidence. See United States v. Jackson, 823 F.2d 4, 5 (2d Cir. 1987); see also United States v. Abuhamra, 389 F.3d 309, 320 n.7 (2d Cir. 2004).

The concept of "dangerousness" encompasses not only the effect of a defendant's release on the safety of identifiable individuals, such as victims and witnesses, but also "the

danger that the defendant might engage in criminal activity to the detriment of the community." United States v. Millan, 4 F.3d 1038, 1048 (2d Cir. 1993) (quoting legislative history).

Whether detention is sought on the basis of flight or dangerousness, the Bail Reform Act lists four factors to be considered in the detention analysis: (1) the nature and circumstances of the crime charged, including whether the offense involves a controlled substance or a firearm; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the seriousness of the danger posed by the defendant's release. See 18 U.S.C. § 3142(g); see also United States v. Jacobson, 502 F. App'x 31, 32 (2d Cir. 2012).

Where the evidence of guilt is strong, it provides "a considerable incentive to flee." United States v. Millan, 4 F.3d 1038, 1046 (2d Cir. 1993); see also United States v. Palmer-Contreras, 835 F.2d 15, 18 (1st Cir. 1987) (per curiam) (where "the evidence against defendants is strong, the incentive for relocation is increased"). Additionally, the possibility of a severe sentence is an important factor in assessing a defendant's likelihood of flight. See Jackson, 823 F.2d at 7; United States v. Martir, 782 F.2d 1141, 1147 (2d Cir. 1986) (defendants were charged with serious offenses whose maximum combined terms created potent incentives to flee).

Evidentiary rules do not apply at detention hearings and the government is entitled to present evidence by way of proffer, among other means. See 18 U.S.C. § 3142(f)(2); see also United States v. LaFontaine, 210 F.3d 125, 130-31 (2d Cir. 2000). In the pre-trial context, few detention hearings involve live testimony or cross-examination. Most proceed on proffer. LaFontaine, 210 F.3d at 131. This is because bail hearings are "typically informal affairs, not substitutes for trial or discovery." Id. (internal quotation marks omitted); see also United States v. Mercedes, 254 F.3d 433, 437 (2d Cir. 2001) ("[The defendant] has twice been convicted of weapon possession—one felony conviction, and one misdemeanor conviction. We find the district court committed clear error in failing to credit the government's proffer with respect to [the defendant's] dangerousness.").

Where a judicial officer concludes after a hearing that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the person before trial." 18 U.S.C. § 3142(e)(1).

III.    Discussion

For the reasons described below, the defendant poses a significant danger to the community and a flight risk if released pending trial, and no combination of bail conditions will ensure the safety of the community and the defendant's appearance before the Court. Thus, a permanent order of detention should be entered.

    A.    Nature of the Crime and Weight of the Evidence

The charged crime is a crime of violence. See 18 U.S.C. § 3142(g)(1); United States v. Hill, 890 F.3d 51, 60 (2d Cir. 2018). The Second Circuit has held that the government is entitled to seek pretrial detention for charges involving crimes of violence. See United States

v. Watkins, 940 F.3d 152, 160 (2d Cir. 2019).  The defendant participated in a brazen armed robbery on a populated neighborhood street in broad daylight.  The perpetrators used terrifying tactics during the robbery, such as using heavy weaponry and pointing guns at victims to cause fear.  Committing a gunpoint robbery, on its own, is extraordinarily dangerous.  Doing so in the afternoon with community members in the store and around the neighborhood shows a wanton disregard for the safety of the community.

       The defendant faces significant charges for his conduct and will likely face additional charges that are not reflected in the Complaint, including a charge under 18 U.S.C. § 924(c) for the brandishing of firearms during the robbery, which carries a mandatory minimum sentence of  seven years (to be served consecutively to the sentence the defendant is already facing for Hobbs Act robbery, which carries a 20-year maximum sentence).  Courts in this Circuit and elsewhere have held that the prospect of a daunting sentence increases the risk of flight.  See, e.g., United States v. English, 629 F.3d 311, 321-22 (2d Cir. 2011); United States v. Henderson, 57 F. App'x 470, 471 (2d Cir. 2003) (citing 18 U.S.C. § 3142(a) and holding that, "[i]n this case, the presumption regarding flight risk has changed because [the defendant] now faces a 10-year mandatory minimum sentence"); Jackson, 823 F.2d at 7; Martir, 782 F.2d at 1147; United States v. Cisneros, 328 F.3d 610, 618 (10th Cir. 2003) (defendant was a flight risk because her knowledge of the seriousness of the charges against her gave her a strong incentive to abscond); United States v. Dodge, 846 F. Supp. 181, 184-85 (D. Conn. 1994) (possibility of a "severe sentence" heightens the risk of flight).

       Moreover, as described above and in the Complaint, there is overwhelming evidence of the defendant's commission of the charged offense.  The entire incident, including its lead-up and aftermath, was captured on video security camera footage.  The defendant can be seen wearing distinctive clothing during the robbery, and the same distinctive clothing soon after the robbery, when he was captured on video footage without his mask on and with his face fully visible.  Cellular phone location data associated with a phone used by the defendant also puts the defendant in the vicinity of the Tobacco Shop close in time to the robbery, and in the vicinity of the location where he can later be seen without his mask.  Where, as here, the evidence of guilt is strong, it provides "a considerable incentive to flee."  Millan, 4 F.3d at 1046; see also Palmer-Contreras, 835 F.2d at 18 (where "the evidence against defendants is strong, the incentive for relocation is increased").

       B.      <u>History and Characteristics of the Defendant</u>

       In evaluating the appropriateness of pretrial detention, the Court should also consider the defendant's criminal history.  The defendant has been undeterred by past punishment.  In particular, the defendant committed the instant offense while still on probation for a 2021 New York state weapons charge, demonstrating a pattern of weapons offenses and a total disregard for court orders and the justice system.  Accordingly, the defendant's history and characteristics weigh in favor of a finding of dangerousness and pretrial detention, and suggest that he cannot and should not be trusted to adhere to any bond conditions that this Court might set.

      C.      The Defendant Poses a Danger and a Risk of Flight

Given the brazen and violent nature of the conduct outlined above, the defendant's release would present a tangible danger to the community. A gunpoint robbery in broad daylight in a public place leaves law-abiding citizens fearful of living, working, and even walking around in their community. It also deeply affects the hardworking store owners and employees who wish to make a living without fearing for their lives, and whose livelihoods depend upon community members feeling safe to patronize their stores. As also described above, the defendant further poses a strong risk of flight if released. The defendant faces a near-certain substantial prison sentence should he be convicted, and overwhelming evidence of his involvement in the offense.

IV.    Conclusion

For the reasons set forth above, the government respectfully requests that defendant be detained pending trial.

                                              Respectfully submitted,

                                              BREON PEACE
                                              United States Attorney

                        By:     /s/ Andrew D. Reich
                                Andrew D. Reich
                                Assistant U.S. Attorney
                                (718) 254-6452

cc:      Clerk of Court (By Email)
         Counsel of Record (By Email)