

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

MWG:ADR/RMU            *271 Cadman Plaza East*
F. #2022R00912             *Brooklyn, New York 11201*

July 31, 2025

By ECF

The Honorable Diane Gujarati
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

         Re:    United States v. Fathy Hussein
                  Criminal Docket No. 24-272 (DG)

Dear Judge Gujarati:

      The government respectfully submits this letter in advance of the defendant's sentencing in the above-referenced case, which is scheduled for August 12, 2025. For the reasons set forth below, the government respectfully submits that a sentence of 84 months' imprisonment would be sufficient, but not greater than necessary, to achieve the purposes of sentencing set forth at 18 U.S.C. § 3553.

I.    Background

    A.    Offense Conduct

      As set forth in the Presentence Investigation Report ("PSR"), on September 14, 2022, at approximately 5:55 p.m., three men wearing masks (the "Robbers") exited a black Mazda 3 sedan with right front-end damage and missing hubcaps (the "Subject Vehicle") and entered a tobacco shop on 109th Avenue in Queens, New York (the "Tobacco Shop"). See PSR ¶ 14. Two of the Robbers immediately pointed firearms at store employees and customers (including what appears to be an assault-style rifle), forcing several of them to the ground. Id.

      Meanwhile, the third Robber, later identified as the defendant Fathy Hussein, ran behind the checkout counter and emptied money from the cash register. Id. The defendant also found and took a bag filled with additional cash that was not stored inside the register. Id. The defendant then grabbed several cannabidiol ("CBD") and marijuana products from a glass display case at the counter and deposited them into black plastic trash bags. Id. Finally, the defendant grabbed several store employees' cell phones that had been left out in the store on the checkout counter and elsewhere. Id.

Thereafter, the Robbers fled the Tobacco Shop and entered the Subject Vehicle, which was waiting at the end of the block at the corner of 109th Avenue and Van Wyck Expressway, and drove off. PSR ¶ 15. In total, they stole approximately $3,000 in cash, approximately $1,000 of CBD and marijuana products, and four cell phones. Id.

The entire robbery was captured on video cameras inside and outside the Tobacco Shop. PSR ¶ 16. All three men can be seen clearly in the video footage wearing distinctive clothes, as shown in Figure 1 below, which is a screenshot of the surveillance footage. Id. ¶ 17. The defendant can be seen wearing dark green pants with distinctive multicolored underwear showing above the waistband. Id. The pattern visible on the underwear includes a large white letter "R" and text resembling the year "1990" in yellow. Id. The defendant can also be seen wearing light brown boots, a dark hooded sweatshirt, white latex gloves, a black facemask and dark sunglasses. Id.



**FIGURE 1**

The video footage of the robbery was made public and appeared on the local news and the internet. PSR ¶ 18. On September 20, 2022, an anonymous call was received on the New York City Police Department ("NYPD") Crime Stoppers hotline with information about the robbery. Id. ¶ 19. Among other things, the caller indicated that, on the day of the robbery, the Robbers attempted to sell the stolen items in the vicinity of 129th Street and Liberty Avenue in Queens, New York. Id. The caller also indicated that one of the Robbers was an individual with the Instagram handle "litty_loccain." Id. NYPD detectives reviewed the Instagram account for "litty_loccain" and observed that the profile picture appeared to be a picture of the defendant, who had prior arrests and whose photograph was available in law enforcement databases. Id.

2

      Based on the Crime Stoppers tip, NYPD detectives reviewed video surveillance footage from the vicinity of 129th Street and Liberty Avenue from the day of the robbery. PSR ¶ 20. Between approximately 6:57 and 7:00 p.m., footage from a storefront camera in that same vicinity shows the defendant walking on Liberty Avenue between 127th Street and 128th Street. Id. In the footage, the defendant can be seen with no mask and his face clearly visible, wearing the same light brown boots, dark green pants, and distinctive multicolored underwear with a white "R" and yellow text resembling the year "1990" that he can be seen wearing during the robbery. Id. NYPD detectives who had previously interacted with the defendant, including during his prior arrests, viewed the Liberty Avenue footage and confirmed that the individual who could be seen in it appeared to be the defendant. Id. Below in Figure 2 are screenshots from this video footage of the defendant seen without a mask after the robbery.

  

**FIGURE 2**

      Location data associated with a phone used by the defendant, obtained pursuant to a search warrant, placed the defendant blocks away from the Tobacco Shop at approximately 5:23 p.m., approximately one half-hour before the robbery, and blocks away from the above-described Liberty Avenue location at approximately 7:34 p.m., approximately one half-hour after he can be seen on video footage walking there. PSR ¶ 21.

3

The defendant was arrested in this case on November 22, 2023. At the time of his arrest, the defendant had in his possession a loaded black Maverick 9mm semiautomatic firearm, bearing serial number 016686. PSR ¶ 22.

Law enforcement has not yet identified the other participants in the robbery. PSR ¶ 22.

B.   Procedural History

On November 17, 2023, the Honorable Vera M. Scanlon, United States Magistrate Judge for the Eastern District of New York, signed a complaint and issued an arrest warrant for the defendant's arrest. See ECF Nos. 1-2. As noted above, the defendant was arrested on November 22, 2023. He appeared in court later that same day before the Honorable Robert M. Levy, United States Magistrate Judge for the Eastern District of New York, who ordered the defendant released on a $75,000 bond. See ECF No. 6.

Between December 8, 2023, and October 14, 2024, Pretrial Services submitted nine violation memoranda to the Court, indicating that the defendant violated the conditions of his release by continuing his illicit drug use.[1] See PSR ¶¶ 4-12. On October 21, 2024, the defendant's bond was revoked, and the defendant was remanded into custody. Id. ¶ 12.

On July 2, 2024, a grand jury sitting in the Eastern District of New York returned a three-count Indictment against the defendant, charging him with one count of Hobbs Act robbery conspiracy, in violation of 18 U.S.C. § 1951(a) (Count One); one count of Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a) (Count Two); and one count of possessing and brandishing a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii) (Count Three).

On April 29, 2025, the defendant pled guilty before Your Honor to Count Three of the Indictment. As part of his guilty plea, the defendant admitted his involvement in the above-described robbery of the Tobacco Shop. See PSR ¶¶ 1-2.

---

[1]   Pretrial Services reported that while the defendant was on release, he tested positive for multiple illicit substances, including marijuana, fentanyl, norfentanyl (a metabolite of fentanyl), benzodiazepine, synthetic cannabinoids and MDMA, on at least fourteen occasions. See PSR ¶¶ 4-12. Because of the defendant's continued drug use, Pretrial Services recommended that the defendant be enrolled in three different residential treatment programs. See id. ¶ 12. The defendant was unsuccessfully and prematurely discharged from each program, each within a two-month period. See id. ¶ 12. On one occasion, the defendant was observed on surveillance camera using and sharing what was believed to be illicit substances with three other treatment participants. See id. ¶ 10. On another occasion, the defendant suffered an overdose inside a treatment facility. See id. ¶ 11. Pretrial Services reported that the defendant demonstrated an unwillingness to address his opioid dependency and a lack of motivation to seek positive and meaningful change, and Pretrial Services subsequently requested a bond revocation hearing. See id. ¶ 12.

4

    C.    <u>Defendant's Criminal History</u>

The defendant committed the instant offense while on probation following a conviction for menacing in the second degree in 2019.  <u>See</u> PSR ¶ 29.  That conviction was based on the defendant's attempt to enter a victim's residence at gunpoint; during the incident, the defendant brandished a firearm and told the victim to open her front door or else he would shoot her.  <u>Id.</u>

In addition to the menacing conviction, the defendant also received a conditional discharge in 2018 for driving while ability impaired after the defendant nearly rear-ended a marked police vehicle while driving under the influence of marijuana.  <u>See</u> PSR ¶ 28.

Since being remanded into custody at the Metropolitan Detention Center in Brooklyn ("MDC"), the defendant has not participated in any educational course or received any work assignments.  <u>See</u> PSR ¶ 44.  The defendant has been involved in three disciplinary incidents, two of which involved refusing to obey orders and one of which involved refusing a work assignment.  <u>Id.</u>

II.    <u>Applicable Law</u>

The United States Sentencing Guidelines ("Guidelines" or "U.S.S.G.") are advisory, not mandatory.  <u>United States v. Booker</u>, 125 S. Ct. 738, 764-65 (2005).  However, the Supreme Court held in <u>Booker</u> that the sentencing court must consider the Guidelines in formulating an appropriate sentence.  <u>Id.</u>  In <u>Gall v. United States</u>, 552 U.S. 38 (2007), the Supreme Court set forth the procedure for sentencing courts to follow in light of <u>Booker</u>:

> [A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range.  As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark.

<u>Gall</u>, 552 U.S. at 49 (citation omitted).

Next, a district court should "consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party.  In so doing, [the district court] may not presume that the Guidelines range is reasonable.  [The district court] must make an individualized assessment based on the facts presented."  <u>Id.</u> at 49-50 (citation and footnote omitted).  Those statutory factors include "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1), and "the need for the sentence imposed – (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; [and] (C) to protect the public from further crimes of the defendant."  18 U.S.C. § 3553(a)(2).

Here, because the defendant pled guilty to an offense under 18 U.S.C. § 924(c)(1)(A)(ii), the mandatory minimum sentence is seven years' imprisonment.  <u>See</u> PSR ¶ 26.  The mandatory minimum sentence is also the advisory Guidelines sentence of imprisonment.  <u>See</u> U.S.S.G. § 2K2.4(b).

5

III.   A Sentence of 84 Months' Imprisonment Is Warranted

The government respectfully requests that the Court impose a sentence of 84 months' imprisonment, which is sufficient, but not greater than necessary, to achieve the goals of sentencing in this case.

   A.   The Nature and Circumstances of the Offense, Reflecting the Seriousness of the Offense, Promoting Respect for the Law and Providing Just Punishment

The defendant's crime of conviction is serious. While the defense argues that the instant armed robbery was "not unique or particularly aggravated," see Def.'s Sentencing Mem. at 4, the government disagrees. The crime involved the use of two firearms, including an assault rifle, and forcing innocent people to the ground so that the Robbers could violently steal money, marijuana products, and cellphones. Even if the defendant himself did not brandish a weapon in the store, the defendant willfully participated in this crime, which placed innocent members of the community at risk of serious harm. Indeed, the defendant relied upon his co-conspirators' display of firearms to instill fear in those at the Tobacco Shop, hampering innocent bystanders' abilities to resist the Robbers. It was only after many individuals were forced to the ground that the defendant himself stole approximately $3,000 in cash, approximately $1,000 of cannabidiol and marijuana products, and four employees' cell phones from the Tobacco Shop. The lack of resistance by the fearful victims of the robbery was likely the reason why no bystanders were harmed by the Robbers' desperate scheme. The defendant must be held accountable for his key role in victimizing members of his community.

   B.   History and Characteristics of the Defendant

As mentioned above, the Tobacco Shop robbery was not the defendant's first time committing an offense that involved threatening another person with a firearm. Further, at the time of the defendant's arrest in this case, the defendant was caught in possession of a loaded firearm, suggesting that he had not abandoned criminal activity. And since his detention at the MDC, the defendant has not taken any meaningful opportunities to improve himself and has incurred numerous disciplinary infractions.

The government recognizes that the defendant has struggled with opioid dependency for a number of years. However, the Court should also consider that Pretrial Services gave the defendant numerous opportunities to address his drug addiction issues, and the defendant failed to take advantage of those opportunities.

   C.   Affording Deterrence and Protecting the Public

Further, a sentence of 84 months' imprisonment is necessary to afford adequate deterrence to criminal conduct and to protect the public from further crimes of the defendant. See 18 U.S.C. § 3553(a)(2)(B) & (C). "Under section 3553(a)(2)(B), there are two major considerations: specific and general deterrence." United States v. Davis, 08 CR 332 (JBW), 2010 WL 1221709, at *2 (E.D.N.Y. March 29, 2010). The defendant participated in this armed robbery, which involved his co-conspirators wielding a gun. When the defendant was arrested over a year later, he was in possession of a loaded firearm himself. And since his participation in the 2022 robbery, the defendant has evidenced an obvious unwillingness to address his addiction

6

or to seek meaningful change. A meaningful sentence is, therefore, necessary to deter this defendant from future criminal activity and to protect the public from the defendant. Furthermore, a sentence of 84 months' imprisonment is necessary to send a message to others that participation in an armed robbery is a serious offense that will result in serious punishment.

IV.  Conclusion

For the foregoing reasons, the government respectfully submits that a sentence of 84 months' imprisonment would be sufficient, but not greater than necessary, to achieve the purposes of sentencing in this case.

Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney

By:  /s/
Andrew Reich
Rebecca M. Urquiola
Assistant U.S. Attorneys
(718) 254-6049